## SOCIETA et al. v. UNITED STATES.

### (Circuit Court, E. D. Pennsylvania. July 16, 1907.)

### No. 91.

SHIPPING—CHARTERS—CONSTRUCTION — PARTIES — UNAUTHORIZED ATTEMPT TO BIND THIRD PARTY.

The United States through its navy department entered into a contract with a firm doing business in New York for the transportation by a named steamship owned by plaintiff of a cargo of coal from Baltimore to Yokohama, Japan. The coal delivered was short of the quantity loaded as checked by the representative of the government and shown by the bill of lading and for which it paid the contractor, and the government deducted the value of the quantity short from the freight, which it paid to the contracting firm. Plaintiff brought suit against the United States to recover the freight so withheld, the charter party having been signed by the firm "by authority of United States government." *Held*, that the transaction did not authorize such signature, nor make the United States a party to the charter, and that whatever right of action plaintiff might have was against the firm, which was, in fact, the charterer.

On Trial by the Court Without a Jury.

Henry R. Edmunds, for petitioner.

Walter C. Douglas, Jr., and J. Whitaker Thompson, for the United States.

J. B. McPHERSON, District Judge. This suit was brought by the corporate owner of the Austrian steamship Klek to recover from the government two items claimed to be due under a charter party, dated March 26, 1901, signed by the owner's agent at Philadelphia, and purporting to be signed, also, by an accredited agent of the United States, the latter signature being as follows:

"By authority of United States Government,
                    "Flint, Dearborn & Co.,
                              "H. E. D. Jackson, Treasurer."

The first item is for $397.60, two days' demurrage at the port of Baltimore, where the cargo—which was wholly of coal—was loaded; and the second item is for $824.15, the value at Baltimore of 235½ tons of coal, which the government deducted from the freight claimed by Flint, Dearborn & Co., on the ground that the quantity of coal delivered at Yokohama, the port of discharge, was only 5,256½ tons, while the bill of lading and other evidence showed that the vessel had taken on board at Baltimore 5,492 tons.

The coal was intended for the use of the navy, but this fact of itself does not determine the government's liability in this action. Whether such liability exists depends upon the true character of the transac-

tion that took place between the officials of the United States and the other persons interested; and, as the government denies that Flint, Dearborn & Co. were authorized to enter into any agreement on its behalf, the evidence upon this fundamental point must be carefully scrutinized. From the papers and the testimony that were offered at the trial I find the facts to be as follows:

In March, 1901, the United States desired to have a cargo of coal (bought, or to be bought, by it from the Consolidation Coal Company) transported from Baltimore to Yokohama, and this desire came to the knowledge of Hopkins & Co., the Washington agents of Flint, Dearborn & Co., who were a firm in New York, and had apparently been in treaty with the Philadelphia agent of the Klek before Hopkins & Co. made any proposal to the government. It will be observed that the charter party is dated March 26th, whereas the following letter was not written until March 27th. On the latter date Hopkins & Co. addressed this communication to the Bureau of Equipment:

"Sir:

"1. On behalf of the Austrian steamer 'Klek' we respectfully offer to transport a cargo of about 5,500 tons of coal (the government to supply the coal) from Baltimore, Maryland, to Yokohama, Japan, at $8.00 per ton freight, loading and discharging to be done by the vessel, both within reach of her tackles.

"2. Steamer to load between April 15th and May 15th, and as much earlier as possible, and to sail immediately after loading, it being agreed that she shall be given steamer despatch loading upon reporting ready to load.

"3. The hatches of the vessel to be sealed if practicable, and to remain sealed until opened by the direction of the Senior Naval Officer present, at Yokohama, to whom she will report.

"4. The government to take coal from the vessel at the rate of 350 tons per day, according to the customs of the port.

"5. Cargo to be delivered on board any ship, lighter or wharf where the 'Klek' can safely lie afloat, as may be directed by the Senior Naval Officer present.

"6. Freight to be payable upon receipt of cable advices of delivery, and only for amount certified to have been delivered.

"7. The government to pay demurrage at the rate of eight cents per ton per day, on net registered tonnage for any detention (caused by the government) within the terms of this tender, the same to be settled here.

"Respectfully,                                    Hopkins & Co.,
          "Agents for Flint, Dearborn & Co., for S. S. Klek.
"Rear Admiral Royal B. Bradford, U. S. N.,
    "Chief Bureau of Equipment."

On the same day Admiral Bradford replied as follows:

"Department of the Navy, Bureau of Equipment.
                              "Washington, D C., March. 27, 1901.
"Gentlemen:

"1. The Bureau accepts your offer of the 27th instant for charter of the Austrian steamer 'Klek', to transport a cargo of about 5,500 tons of George's Creek coal from Baltimore to Yokohama, Japan, at $8 00 per ton freight, to load between April 15th and May 15th, or earlier if possible.

"2 Requisition will follow.

"Very respectfully,                              R. B. Bradford,
                                                  "Chief of Bureau

"Messrs. Flint, Dearborn & Co.
    "Care Hopkins & Co.,
        "Washington Loan & Trust Building,
            "Washington, D C."

On April 17th a formal proposal on an official form was sent to Flint, Dearborn & Co. from the Navy Pay Office in New York, and was accepted by them on the same day. The essential parts of the proposal follow:

"U. S. Navy Pay Office.

"Stewart Building,

"280 Broadway, P. O. Box 1900.

"New York, April 17, 1901.

"Flint, Dearborn & Co.:

"Please return this proposal, duly signed, by return mail, with prices entered opposite each item named below, for delivery, free of charge, as stated below, subject to the conditions printed on the back of this form.

"Respectfully,        Henry M. Denniston, Pay Director, U. S. Navy.

| "Articles Required. | Total Amount of Each Item. |
|---|---|

"Requisition No. Bu-116, Bureau of Equipment

"For General Service

"1. Transportation of about 5,500 tons best quality George's Creek coal, run of mine, from Baltimore, Md. to Yokohama, Japan, at            per ton                                            $8.

"2. Shipment to be made in the Austrian steamer 'Klek,' the coal to be supplied by the government.

"3. Steamer to load between April 15th and May 15th (earlier if possible) it being understood that upon reporting at Baltimore ready to load she shall be given steamer despatch, and upon completion of loading to sail for Yokohama, and upon arrival there to report to the U. S. Naval Attache at Tokio, Japan, and be subject to his orders in the matter of discharge.

"4. All expenses of loading and discharging to be borne by the ship.

"5. Cargo to be received and delivered within reach of the ship's tackle.

"6. The government agrees to take discharge of the coal from the ship at the rate of 350 tons per day, according to the customs of the port, or pay demurrage at the rate of eight (8) cents per ton per day on the net registered tonnage of the vessel (net registered tonnage 2,485 tons) for any detention caused by the government (through fault of its own), not receiving the coal at the above mentioned rate, it being understood that 24 hours' notice of arrival shall be given before lay days commence.

"7. Cargo to be delivered on the wharf at Yokohama, or on board any ship or lighter in the harbor where the vessel can safely lie afloat, as may be directed by the U. S. Naval Attache.

"8. Payment to be made upon receipt of cable advice from the Naval Attache, and only for amount certified to have been delivered, but under no circumstances shall payment be made for freight on any quantity in excess of the bill of lading weight.

"9. Any question of demurrage to be settled at Washington.

"Order to be placed with Messrs. Flint, Dearborn & Co. of New York.

Aggregate amount of proposal.............................$44,000

"———— do hereby agree to furnish within ———— days, and in conformity with this proposal, the above articles at the prices affixed thereto. Articles not delivered within the time specified herein may at the option of the purchasing officer, be obtained elsewhere, any difference in price to be charged to ———— account.                      Flint, Dearborn & Co.,

"H. E. D. Jackson, Treasurer.

"11 Broadway, N. Y. City."

On April 18th this proposal was formally accepted by Pay Director Denniston, and the contract between the United States and Flint, Dearborn & Co. was thus completed. The latter agreed to furnish transportation in a specified steamship, and the former agreed to pay a definite price therefor. The Klek thereupon proceeded to Baltimore, began to load on April 24th and finished taking in cargo on May 4th. During four days of this time the weather was cold and rainy, the coal was wet, the ship's officers refused to receive it in that condition, and the work of loading was necessarily suspended. The first item of the plaintiff's claim was for demurrage during two of these 11 days at the rate named in the charter party; the averment being that the delay was the fault of the government. This averment, however, is not supported by the evidence, even if the charter party bound both the parties to this suit. It appears affirmatively by the testimony of two of the ship's officers that the unfavorable weather was the sole cause of the delay, and there is no evidence of fault on the part of the United States. Moreover, the charter party upon which this action is based does not bind the government. There is no evidence that Flint, Dearborn & Co. had any authority to represent the government in chartering the ship, and the Bureau of Equipment had therefore no special concern with the terms of that instrument. The United States did not charter the Klek, and did not deal with the owner's agent. Its agreement was solely with Flint, Dearborn & Co., and while, of course, as was perfectly proper, its representatives were present at the loading and superintended the work, checking the weights delivered by the Coal Co.'s cars, and overseeing the shipment, these facts did not change the contractual relations which had theretofore been completed between the United States and Flint, Dearborn & Co. Perhaps, if the government had unwarrantably interfered with the loading of the cargo, it might have been liable in damages for detention, but there is no evidence to sustain such a claim, as I have already stated, or to sustain the claim that is made under the charter party in the present action. Indeed, the first item was practically abandoned at the trial, and nothing more need be said about it. The claim for demurrage is disallowed.

The second item must be similarly treated. The weight of the coal taken on board at Baltimore was not checked by any representative of the ship, but was checked solely by persons representing the government. By these persons the weight was reported as 5,492 tons, and in accordance with their report bills of lading were issued of which the following is a copy:

"Shipped by the Consolidation Coal Company, in good order, in and upon the Aust. S. S. called the Klek, of Fiume, whereof Kisselich is master, now lying in the port of Baltimore, Md. and bound for Yokohama, Japan, fifty-four hundred and ninety-two tons George's Creek Big Vein Cumberland Coal, from the mines of the Consolidation Coal Company (as per margin), to be delivered in like good order at the aforesaid port of Yokohama, Japan (the dangers of the seas only excepted), unto U. S. Naval Attache, Tokio, Japan, or to his or their assigns, he or they paying freight for the same at the rate of eight dollars U. S. gold per ton of 2,240 lbs. coal delivered, and all other conditions and clauses as per charter-party dated Philadelphia, Pa. March 26, 1901.

"In witness whereof, the master or agent of said vessel hath affirmed to 8 bills of lading all of this tenor and date, one of which being accomplished, the others to stand void.

"Dated, at Baltimore, Md., May 3rd, 1901.           A. Kisselich.
"Weight and quality unknown."

When the ship arrived at Yokohama early in August, the cargo was unloaded under the supervision of the government and also of the vessel, and these representatives agreed in reporting that only 5,256½ tons were discharged, showing an apparent deficiency of 235½ tons. Being notified of this fact by cable, the Bureau of Equipment sent the following letter to Flint, Dearborn & Co.:

"Department of the Navy, Bureau of Equipment.
"Washington, D. C. Aug. 5, 1901.
"Gentlemen:

"1. You are informed that the Bureau is advised by cablegram of the discharge of 5,256½ tons coal at Yokohama, per S. S. 'Klek' chartered of you in April, 1901, under requisition #113, 1901.

"2. This ship carried out from Baltimore 5,292 tons, and the discharge of the quantity stated above shows a shortage of 235½ tons.

"3. Your attention is invited to the fact that the 'Osborne' also chartered of you for same place delivered 50 tons short of bill of lading weight, thus showing a loss on the two cargoes of 285½ tons.

"4. The Bureau states that payment was made to the contractors furnishing the coal for the quantity shown by the bill of lading, viz., 5,492 tons, and it cannot view with complacency the loss of so great a quantity in shipment.

"5. The Bureau requests to be informed as to what proposition you have to submit in the premises.

"Very respectfully,        R. B. Bradford, Chief of Bureau.
"Messrs. Flint, Dearborn & Co.,
"11 Broadway, New York City."

To this communication, Hopkins & Co. replied on August 7:

"Hopkins & Co., Washington Loan & Trust Building,
"Washington, August 7, 1901.
"Sir:

"Referring to conversation on the subject of shortage cargo per S. S. 'Klek,' we desire to state as follows:

"If the bureau thinks it is justified in holding over from the freight money now due the value of the 235½ tons of coal short of bill of lading weight, it is respectfully requested that payment of freight be immediately made, less the value of this shortage.

"Very respectfully,        Hopkins & Co.
"Rear Admiral Royal B. Bradford, U. S. N.
"Chief Bureau of Equipment, Navy Department."

The government made settlement with Flint, Dearborn & Co. on this basis, and thus closed the transaction with them. The transaction was closed, also, in my opinion, so far as concerns the present suit. The plaintiff's contract for the payment of freight was not with the United States, but with Flint, Dearborn & Co., and whatever claim it may have on this account should be urged against that firm. It is not material, therefore, to find the facts concerning the apparent discrepancy between the weight of the cargo at Baltimore and at Yokohama. If the ship really took on board 5,492 tons, and really discharged that amount, in spite of the evidence to the contrary, its claim for unpaid freight is against the other party to the charter, and not against the United States,

whose agreement with Flint, Dearborn & Co. only bound it to pay for "amount certified to have been delivered"—an agreement that has been faithfully carried out.

Judgment may be entered in favor of the defendant, with costs.